And counsel may begin whenever you're ready. Thank you, Your Honor. Good morning, Your Honors. My name is Lori Tyker, and I represent Petitioner Appellant Mr. Ron Davis. I ask and I'll attempt to reserve two minutes in looking at the clock. The issue certified by this Court is whether or not Mr. Davis is entitled to an evidentiary hearing on equitable tolling due to mental incompetency. This is a case about the fact of a couple of interrelated issues, the first being his Mr. Davis' mental impairment, as well as the overlay of the complex procedural problems that occurred in his case as he was pursuing his appellate remedies. Mr. Davis is borderline mentally retarded. He's not a bright guy that we're dealing with. He was evaluated by a neuropsychologist who gave him a number of hours of testing. He scored below average on a fair number of those tests, and on at least one test 90 to 95 percent of all people score higher than he did. His IQ was determined to be 84, a little bit above borderline mental retardation being established at 79. What we have here is we have Mr. Davis' mental impairment, as well as procedurally an unbelievably complicated case, even for those of us that deal with this all the time as habeas lawyers. Well, counsel, could you help us with how he handled his earlier matters? Was he assisted? Was he doing that pro se, the other cases that were handled and that the district court relied on and saying, well, he really cannot complain about tolling under those circumstances? In terms of what happened before, he was pro se all the way along, all the way through this. And he really relied on the mercy of any prison inmate law clerks that he could get to assist. And in dealing with prison inmate law clerks, you kind of dealt the hand that you're given in terms of trying to get some help. He was clearly not able to do this on his own. He had, and one of the only issue that he's raised on appeal is that his lawyers failed to file his direct appeal, a Lozada claim, and that's the claim that he's been trying to litigate all along, ever since he was convicted back in 95. The Lozada claim, the failure to file his appeal and direct appeal, he had an issue and the irony of it is that it's an issue that everyone knew that he was going to be raising throughout this process. He entered a plea. As soon as he entered into that plea, he attempted to withdraw it. They had a two-day hearing on whether or not he wanted to, whether or not the trial judge was going to allow him to withdraw that plea. It's an issue that absolutely everybody should have been on notice that he would have wanted to appeal. His lawyers sent him a letter. He wrote his lawyers and said, help me, you know, what's going on with my direct appeal? He got a letter back from them after the trial. He wrote his lawyers a letter and said, help me? And said, what's going on with my appeal? Yeah. Again, manifesting an awareness of options and where he was. That's true. That's true. And he thought his lawyers were taking care of that with him, for him, and so he understood that, but he didn't know how to do it. He's just not a bright enough guy. Then he started filing legal papers. Then he started filing legal papers with the help of prison law clerks. But what happened procedurally is extremely complicated. What he did was he filed his direct appeal. But counsel, let me just say, it seems that almost every case that we get has procedural complications in it. What is so out of the realm of ordinary about the procedures here that would cause a several-year delay to be excused? Because of what happened as a result of each of them. If you take a look at what happened in each filing, it's just ironic in terms of the timing of all of these things in the procedural history. He files his direct appeal. There's an order dismissing that. They say that it's untimely. The Nevada Supreme Court says it's untimely, but you can file a state post-conviction petition. And did he do that? He did that. He did. And he also filed the first Federal petition. And so he was trying to do this guy's pace. He's pace. He's being diligent. He's trying to do whatever he can, not really understanding. What explains this extraordinary time period of five years span where nothing happens? I mean, he's really active for a while, and then there's five years. And I can't find anything in the record that explains the five years. Well, the five years, again, and I hate to keep coming back to the procedure, but it's a result of a not-bright guy not being able to know what to do next. He's gone to Federal court twice. And the second time ---- Does it say that in the record? I was just not a bright guy and I didn't know what to do, so I just laid out for five years? Well, an evidentiary hearing would help establish that more in terms of getting his testimony on. Is there an affidavit that says that? No, there's not. So what's the basis, then, for ordering an evidentiary hearing other than wishful thinking? The basis for the hearing is that all throughout this ---- all throughout his procedure, he filed the State court petition. They dismissed it. The petition was dismissed because it wasn't verified. That's a curable defect. That was the Nevada Supreme Court and the district court made a mistake in that, but he's not a bright enough guy to figure that out. The Federal court, he goes back because the Federal court the first time said you need to exhaust your claims. So he goes and does that. They dismiss it for a reason that's not even valid. It's curable. But he doesn't understand that. I mean, he's got an IQ of 84. He goes back to Federal court, and the Federal court summarily dismisses again saying that he's not exhausted. Well, he was exhausted. And so at this point, you know, he's been to State court twice. One time they made a mistake. The other time they didn't get ---- he didn't even have adequate time in order to file his State postconviction petition. He's gone to Federal court twice. The Federal district court improperly the second time dismissed his petition without allowing him to say, hey, wait a minute, I am exhausted. They just dismissed it out of hand. And so you've got a not bright guy who's saying what do ---- how many times do I need to file? Federal counsel, that might be persuasive if he had then actively and vigorously continued to pursue it, finding himself with a number of dead ends. But here we have silence descends, and it descends for an extended period of time. Now he comes back in and says, well, I really need a hearing to deal with the question whether I somehow was unable to pursue the matter, and deals with that basically as a constitutional issue, that it's very difficult to reconcile those, isn't it? Well, I don't think so. And I think what it comes down to is that, yes, there is this gap, but in terms of looking at that gap, what the Court has to look at is his ---- what he's done. He's been diligent. And what are we going to require these pro se litigants that are not that intelligent to do? I mean, how many times does he have to file? He gets unbelievably frustrated and gives up for a while. But our equitable tolling jurisprudence requires that there be some extraordinary circumstance beyond the person's control. And I suppose in a certain way of speaking, frustration is beyond one's control, but I don't know that it counts as extraordinary. So I ---- and neither does being not particularly a bright guy differentiate him from most or many of the pro se litigants that we see. So I just have difficulty fitting your facts into that construct. I think in terms of fitting our facts into that construct, the answer is the fact that you are dealing with a not bright guy who has gotten no process from the State and Federal courts. And this is a situation procedurally where it would be very complicated for a ---- if he had counsel to have been able to litigate this adequately. And I think the extraordinary circumstances are him not being bright and the fact that all along the way, every step he made, the courts messed it up for him. If you win, is he eligible again to be tried for the death penalty? Yes. So he's rolling the dice. Yes. Did he ever request counsel at the later stage, any of the later stages? I believe that he requested counsel all the way through. You have about a minute left. We'll leave it for you for rebuttal since you asked for that. Mr. Warwick. May it please the Court, I'm Deputy Attorney General John Warwick here representing Respondent Appeals. The standard that we're looking at today is whether or not Judge Reed abused his discretion in finding that the grounds for the claim of equitable tolling were insufficient to warrant an evidentiary hearing. Well, maybe before we get to that, you're not seriously contending that equitable tolling is not available as a doctrine, are you? We're preserving that issue for the record, Your Honor. Okay. I would like to move on to laws and how laws can be distinguished from this particular case. In laws, you had an individual who made an unrebutted allegation in his State petition that he was, quote, deprived of any kind of consciousness in those years. That's laws at 924. Now, you've got that kind of allegation in laws, and in this situation, we're nowhere close to that. As counsel and the panels noted, that Mr. Davis had an IQ of 84. At least that's what the testimony was at his sentencing hearing. That is above what's considered the level for mental retardation, which, at least in this one expert's opinion, was 79. There was a case cited by a petitioner in their opposition to motion to dismiss, except for the record, 1664, Tacho v. Martinez, in which they state that borderline intelligence alone is insufficient for equitable tolling. And if you combine that with what was alleged, that IQ is 84, that he had a learning disability, an impoverished academic background, as Judge Reed said, those items are far too general to go further with the case. There wasn't anything there that Judge Reed felt needed to be continued. There was a no explanation on how or why those factors caused a delay. And once again, as the panels noted, there's almost a five-year gap in between his filing. And what did he file shortly after his conviction? There was a direct appeal, and then after that, there was his first state post-conviction, and then he filed two Federal petitions. And then you've got that five-year interval in which nothing's filed with the Federal courts. Based upon that, even when you look at laws, the question that was certified that it is enough to allege mental incompetency, that's not what really is alleged here. As counsel has indicated, well, perhaps Mr. Davis is not all that bright. But when you examine the record, it's not as if he's in that it is impossible for him to do anything. He wrote a letter to his attorney. It seems to me that what we're dealing with is frustration. And we'd have to write an opinion that's saying frustration for failure to accomplish what you're after is sufficient to invoke these doctrines and get you an evidentiary hearing. And if that frustration leads a person to sit on their rights for five years, so be  Does the panel have any further questions? I don't believe that we do. Thank you. Mr. Tucker, you have about a minute left for rebuttal, if you'd like. Isn't that what it boils down to? He quit because he was frustrated? He quit because he had been summarily dismissed out of every court that he'd been in. And he's not bright enough to be able to figure out what to do next. The combination of the intelligence, the mental impairment, plus the procedure and the process that he didn't get, I believe entitles him to equitable tolling. Counsel, you know, that's like saying that it simmered for five years and finally it came to a boil. That is, it overcame the frustration sufficiently so he tries again. And that's an awfully difficult thing to fit into a constitutional construct, isn't it? I don't think so, because, again, you're dealing with a guy who is borderline mentally retarded. He's gone to the courts and over and over and over and over again they say no. How many times is enough? After the five years, how did he kick-start the thing again? My understanding is that he went to, found yet another prison law clerk who took a look at his stuff and said, wait a minute, you know, you had some, there's some stuff going on here, which he couldn't have figured out. But there's nothing that prevented him from finding that person 4.7 years earlier. Well, again, he's at the whim of whoever's in the system and who's ever willing to talk to him. And if there wasn't anybody there, which is my understanding, if there wasn't anybody there that would take a look at this and really sit down and puzzle it out, because this really is a puzzle. It's not really obvious things that the Nevada Supreme Court improperly dismissed that first date petition. They improperly dismissed it because it wasn't verified. That's a very nuanced reason to dismiss something that a prison law clerk may not understand. They're also not going to easily understand the fact that with the second Federal petition, that was summarily dismissed because the district court said that he wasn't exhausted. Well, he was exhausted. And you wouldn't be able to figure that out because the dates overlap each other so quickly, and he's summarily dismissed so fast and not able to respond to anything that it really takes somebody that understands what they're doing to be able to puzzle through this and say, hey, wait a minute. You know what? Your process wasn't right, and this guy is just not bright enough to be able to do that on his own. Thank you, counsel. We understand your position, and your time has expired. We appreciate the arguments of both counsel, and the case just argued is submitted.
judges: Trott, Graber, Cjj Shadur (n.ill), Dj